IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TRUSTEES OF THE NATIONAL AUTOMATIC SPRINKLER INDUSTRY WELFARE FUND, *et al.*, | * * * * |
| Plaintiffs, | * * |
| v. | * Civil Action No. TDC-24-02172 * |
| FIRE WATER SPRINKLER PROTECTION LLC*., et al*., | * * * |
| Defendants. | * * |

******

## REPORT AND RECOMMENDATIONS

This "Report and Recommendations" addresses the "Motion for Entry of Default Judgment" and memorandum of law in support thereto, (ECF Nos. 10, 10-1), filed by the Plaintiffs, who are Trustees of the following: (a) National Automatic Sprinkler Industry Welfare Fund ("NASIWF"); (b) National Automatic Sprinkler Local 669 UA Education Fund ("Local 669"); (c) National Automatic Sprinkler Industry Pension Fund ("NASIPF"); (d) Sprinkler Industry Supplemental Pension Fund ("SISPF"); (e) International Training Fund ("ITF"); and (f) Road Sprinkler Fitters Local Union 669 Work Assessments, Extended Benefit Fund and Industry Advancement Fund ("Advancement Fund"). Plaintiffs brought this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1132 and 1145, ("ERISA") to recover delinquent contributions and related relief from Defendants Fire Water Sprinkler Protection LLC, Inc. ("Defendant Fire Water") and David Nino ("Defendant Nino"), (collectively, "Defendants"). (ECF No. 1, "Complaint").

Pursuant to 28 U.S.C. § 636, and Local Rule 301 (D. Md. 2023), the Honorable Theodore D. Chuang referred this matter to me to author a report and to make recommendations. (ECF No.

14). I do not believe that a hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, I ultimately recommend that Plaintiffs' "Motion for Entry of Default Judgment" be **GRANTED**, and that damages be awarded as set forth herein.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

   A.   **Factual Background**

   *1.   Agreements Related to Contributions to the NASI Funds*

Plaintiffs are Trustees and the authorized collection fiduciaries and agents of NASIWF, Local 669, NASIPF, SISPF, ITF, and the Advancement Fund (collectively, "NASI Funds"), which were established pursuant to executed agreements binding the parties to terms of the Collective Bargaining Agreement and Restated Trust Agreements and amendments related thereto (collectively, "Trust Agreements") and the "Guidelines for Participation in the Sprinkler Industry Trust Funds" ("Guidelines"). (*See* Complaint, ¶ 2; ECF Nos. 10-5 through 10-14).

On March 21, 2016 and May 25, 2021, Defendant Fire Water, by and though Defendant Nino, executed an "Assent and Interim Agreement" ("Agreement"), which bound it to the terms of a Collective Bargaining Agreement entered into between the National Fire Sprinkler Association, Inc. and Road Sprinkler Fitters Local Union 669 related to the NASI Funds. (ECF Nos. 10-4, ¶ 3; 10-5; 10-7). By signing the Agreement, Defendants acknowledged that it is bound by the terms and conditions of the Trust Agreements and Guidelines. (*Id.*). Specifically, Defendants agreed to make monthly contributions to the NASI Funds on behalf of its union member employees, as well as to keep records and submit monthly reports to the NASI Funds of the hours worked by those covered employees. This arrangement was to continue through March 31, 2025. (*See, e.g.*, ECF Nos. 10-4, ¶¶ 3, 4, 9; 10-5, ¶ 5; 10-6, pp. 31-39; 10-7, ¶ 5; 10-8, pp. 31-34; 10-9, pp. 21-26; 10-10, pp. 18-23; 10-11, pp. 19-25; 10-12, pp. 18-24; 10-13, pp. 23-29; 10-14, pp. 4, 5, 10, 15).

The amounts of the monthly contributions to the NASI Funds were based on the hours worked by the Defendants' employees. (*Id.*). In order to help the Plaintiffs track the contribution amounts due to the NASI Funds, the Trust Agreements and Guidelines required the Defendants to provide monthly reports to the NASI Funds alongside all payments due. (*Id.*).

If the Defendants failed to timely submit contributions and/or reports, the Trust Agreements, the Amendments thereto, and the Guidelines stipulated that various penalties may apply. In particular, the Plaintiffs may collect unpaid contributions and the following based on the delinquent contributions: (1) liquidated damages if the contributions are 60 days late or more; (2) varying rates of interest, compounded monthly; and (3) attorney's fees and costs incurred in collecting the delinquent amounts. (*Id.*).

    2. <u>Settlement Agreement Related to Unpaid Contributions and Liquidated Damages</u>

On February 25, 2024, due to a "substantial difficulty in making the required benefit contributions owed to the NASI Funds," Defendant Fire Water, as executed by Defendant Nino, and the NASI Funds "entered into a Settlement Agreement and Promissory Note." (ECF Nos. 10-4, ¶ 10; 10-15). At the time that the settlement agreement was executed, Defendant Fire Water owed $27,738.98, plus liquidated damages ($5,046.19) and accrued interest ($483.87). (ECF Nos. 10-4, ¶ 11; 10-15). As part of the settlement agreement, Defendant Fire Water was granted a waiver of $5,046.19, and Defendants agreed to pay $10,000 by February 29, 2024, which left a balance of $18,222.85. (ECF Nos. 10-4, ¶¶ 11-12; 10-15). The balance was to be paid in equal monthly installments of $1,576.76 over a period of twelve (12) months starting on March 20, 2024. (ECF No. 10-15, ¶ 4). In addition, Defendants were required to "remain current in all future contributions to the [NASI] Funds and [file] all monthly report forms and payments on time as required by [the Trust Agreements]." (ECF No. 10-15, ¶ 8).

Ultimately, Defendant Fire Water only made seven of the payments required by the settlement agreement, with the last payment made on September 20, 2024, resulting in a principal balance owed of $7,747.71. (ECF No. 10-4, ¶ 14). Thus, because Defendant Fire Water defaulted on the terms of the settlement agreement by failing to remain current in paying its monthly contributions owed to the NASI Funds, it led Plaintiffs to seek liquidated damages in an amount of at least $5,046.19. (*Id.*).

Next, after the Complaint was filed on or about July 26, 2024, Defendant Fire Water did submit the reports and make the required contributions for the months of May and June 2024, but it failed to do so for July 2024 and August 2024. (ECF No. 10-4, ¶ 15). (*Id.*).

**B. Procedural Background**

On July 26, 2024, Plaintiffs filed a Complaint against the Defendants alleging breach of the Trust Agreements and Guidelines established by the NASI Funds. Plaintiffs are seeking to collect unpaid contributions allegedly owed to the NASI Funds for work performed. Plaintiffs also seek "liquidated damages which become due subsequent to the filing of this action through the date of judgment, plus costs, interest, and reasonable attorneys' fees." (Complaint, p. 7).

On August 15, 2024, affidavits of service were filed reflecting that service of process had been effectuating upon Defendant Fire Water on August 5, 2024, and Defendant Nino on August 6, 2024. (ECF Nos. 5, 6). Defendants failed to file a responsive pleading within the 21-day period required by Federal Rules of Civil Procedure 4 and 12, namely by August 26, 2024 (for Defendant Fire Water) and August 27, 2024 (for Defendant Nino). On September 3, 2024, Judge Chuang issued an Order directing the Plaintiffs to file and serve on each Defendant a Motion for Clerk's Entry of Default within fourteen days of the Order, or show cause as to why such motions would be inappropriate. (ECF No. 7).

On September 18, 2024, Plaintiffs filed its "Response to Order to Show Cause." Attached in support thereto was a "Declaration" as executed by Charles W. Gilligan, Esq., Counsel for the Plaintiffs, with supporting proof of service on the Defendants. (ECF Nos. 8, 8-1 through 8-3). Therein, Mr. Gilligan declares that in August 2024, after the Defendants were served with the Complaint and Summonses, the Defendants made partial payments to the Plaintiffs, an agreement was reached between the parties, and that a dismissal of the lawsuit would be filed contingent on the Defendants making "another sizeable payment by September 30, 2024." (ECF Nos. 8, p. 2; 8-1). Plaintiffs advised that "[i]f the Defendants fail to make the agreed upon payment by September 30, 2024, the Plaintiff[s] will file Motions for Default and Judgment with the Court no later than October 10, 2024." (*Id.*)

On October 3, 2024, Plaintiffs filed a "Motion for Clerk's Entry of Default," against the Defendants. (ECF No. 9). Also on October 3, 2024, Plaintiffs filed a "Motion for Entry of Default Judgment" (the "Motion") and a memorandum in support. (ECF Nos. 10, 10-1). In addition, Plaintiffs appended: (a) a declaration and document from Charles W. Gilligan, Esq. related to Defendant Nino's non-military status; (b) a supplemental declaration from Anna E. Bosmans ("Ms. Bosmans"), Assistant Fund Administrator of NASI Funds, and the following documents: (i) Trust Agreements and Amendments to the same; (ii) the Guidelines; (iii) agreements between the parties; (iv) spreadsheets showing the amounts of contributions owed, the interest accrued, and the liquidated damages associated therewith for the period of July 2024 and August 2024; and (c) a declaration and documents from Charles W. Gilligan, Esq. related to attorney's fees and costs. (ECF Nos. 10-2; 10-4 through 10-21).

On October 10, 2024, the Clerk of the Court entered default against the Defendants and issued Notices of Default, notifying the Defendants that they had "(30) days from this date to file

a motion to vacate the order of default." (ECF Nos. 12, 13). To date, neither Defendant has filed a responsive pleading, or otherwise sought to defend against the instant lawsuit.

## II. DISCUSSION

### A. **Default Judgment**

Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") governs default judgments. Upon motion of a party, Rule 55(a) provides that a default judgment can be entered when a defendant fails to "plead or otherwise defend in accordance with [Rule 55]." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982).

When evaluating a motion for default judgment, a district court accepts as true the well-pleaded factual allegations in a complaint, other than those pertaining to damages. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001); *see also* Fed. R. Civ. P. 8(b)(6). If a party's factual allegations are unchallenged because of a defendant's unresponsiveness, a district court has the discretion to grant default judgment. *See* Fed. R. Civ. P. 55(a)–(b); *see also Disney Enters., Inc. v. Delane*, 446 F. Supp. 2d 402, 405-06 (D. Md. 2006) (holding that entry of default judgment was proper because defendant had been properly served with a complaint and did not respond, even after plaintiffs tried repeatedly to contact him); *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005) (concluding that default judgment is appropriate when defendant is "unresponsive for more than a year" after denial of motion to dismiss, even though defendant was properly served with plaintiff's motions for entry of default and default judgment); *Park Corp v. Lexington Ins. Co.*, 82 F.2d 894, 896 (4th Cir. 1987) (affirming default judgment when defendant lost summons and did not respond within the proper timeframe).

In this case, more than eight months have passed since the Defendants were served the Complaint; and more than six months have passed since the Plaintiffs filed the Motion for Clerk's Entry of Default and the Motion for Default Judgment. (*See* ECF Nos. 1, 9, 10). Defendants have

neither filed an opposition nor otherwise defended against this case. Plaintiffs filed affidavits of service demonstrating that the Complaint, Summonses, and supporting documents were served via a private process server upon each respective Defendant or a representative authorized to accept service. (ECF Nos. 5, 6). In addition, the Defendants, upon receipt of the service of process, contacted Counsel for the Plaintiffs, made partial payments, and entered into an agreement to make a "sizeable payment by September 30, 2024." (ECF No. 8, p. 2; ECF No. 8-1, ¶¶ 5-7). However, as evidenced by the filing of the Motion for Clerk's Entry of Default and the Motion for Default Judgment, the undersigned infers that the Defendants failed to make the payment as agreed. Therefore, I find that the Defendants are not in active military service and have been available to respond or defend against this case, yet have failed to do so. (*See* ECF Nos. 10-2, 10-21). Thus, I recommend that default judgment be entered.

### B. Damages

Although liability has been established, any allegation concerning the amount of damages is not deemed admitted just because a defendant fails to deny in a required responsive pleading. Fed. R. Civ. P. 8(b)(6). "With respect to a default judgment, '[c]laims for damages must generally be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed.'" *Trustees of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation, Inc.*, Civ. No. ELH-11-832, 2011 WL 5151067, at *4 (D. Md. Oct. 27, 2011). If the record supports the damages requested, however, then a court may award damages without a hearing. *See Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, Civ. No. NKM-09-0004, 2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (concluding that no evidentiary hearing on damages is needed based on moving party's affidavit and printout submissions establishing amount of damages sought); *DirecTV, Inc. v. Yancey*, Civ. No. MFU-404-11, 2005 WL 3435030, at *2 (W.D. Va. Dec. 12, 2005) (concluding that where sufficient evidence exist to support

damages, "[a] hearing in open court is not required"). The type and amount of damages that may be entered as a result of a party's default are limited to the amount that is demanded in a party's pleadings. Fed. R. Civ. P. 54(c).

*1. Contributions*

Plaintiffs assert that the Defendants are delinquent in making contributions for the months of July 2024 and August 2024. (ECF Nos. 10, ¶ 2; 10-4, ¶¶ 16, 19).

I find that the applicable ERISA provisions, the Trust Agreements establishing the NASI Funds, and Agreement required the Defendants to have made timely contributions. 29 U.S.C. § 1145 (1980) of ERISA requires that:

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

I find that the Plaintiffs are considered multi-employer plans, because they are multi-employer pension benefit plans, as defined by 29 U.S.C. §§ 1002(2) and (3). (*See* ECF No. 10-14, p. 16). In addition, the record demonstrates that both Defendant Fire Water and Defendant Nino, as its agent/representative, are parties to the Agreement binding them to the Trust Agreements and Guidelines governing the NASI Funds. (ECF No. 10-5). By signing the Agreement, the Defendants accepted the terms therein and the terms of the Trust Agreements and Guidelines. (*Id.*). I further find that the Trust Agreements and Guidelines governing the NASI Funds obligated the Defendants to make contributions based upon payroll generated for each covered employee. (*See* ECF Nos. 10-5, ¶ 5; 10-6, pp. 31-39; 10-7, ¶ 5; 10-8, pp. 31-34; 10-9, pp. 21-26; 10-10, pp. 18-23; 10-11, pp. 19-25; 10-12, pp. 18-24; 10-13, pp. 23-29; 10-14, pp. 4, 10, 15).

In order to recover delinquent contributions, multi-employer plans are permitted to file a civil action. *See* 29 U.S.C. §§ 1132, 1145. If a plaintiff prevails in its action, a district court is

8

then required to award: (1) the unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages; (4) reasonable attorney's fees and costs of the action; and (5) "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2).

The Supreme Court has explained that a plan's ability to bring forth legal action as "an effective federal remedy to collect delinquent contributions." *Laborers Health & Welfare Trust Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 541 (1988). In interpreting a collection action arising under 29 U.S.C. § 1145, the Fourth Circuit has reasoned that "a multiemployer plan can enforce, as written, the contribution requirements found in the controlling documents," because this "puts multiemployer plans in a stronger position than they otherwise occupy under common law contract principles." *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021 (4th Cir. 1997). I find that Plaintiffs have the right to collect unpaid contributions from the Defendants.

   2. *Specific Recovery Sought*

As permitted by 29 U.S.C. § 1132(g), Plaintiffs seek the following for the NASI Funds: (1) a sum of $12,793.90 ($7,747.71 for delinquent contributions and $5,046.19 as reinstated liquidated damages) as a result of the Defendants defaulting on the terms of the Settlement Agreement and Promissory Note; (2) unpaid contributions in the amount $12,557.79 for the months of July 2024 and August 2024; (3) $170.16 in accrued interest assessed at the rate of 12% *per annum*; (4) $1,706.23 in liquidated damages which represents 20% of late contributions and delinquent contributions due and owing for July 2024 and August 2024; (5) $1,743.00 in attorney's fees; and (6) $700.00 in costs. (ECF Nos. 10, 10-1).

I reviewed all of the Plaintiffs' supporting documentation to make my findings and recommendations.

a. Default on the Settlement Agreement and Promissory Note

Plaintiffs assert that the Defendants have defaulted on the Settlement Agreement and Promissory Note and thereby owe a sum of $12,793.90 ($7,747.71 for delinquent contributions and $5,046.19 as reinstated liquidated damages). (ECF Nos. 10, ¶ 1; 10-1, p. 2). I find that the Plaintiffs' request is supported by a declaration from Ms. Bosmans, the Settlement Agreement and Promissory Note, and related documents. (ECF Nos. 10-4, ¶¶ 10-14; 10-15). Defendants have not refuted the Plaintiffs' evidence because they failed to file a responsive pleading. Thus, I recommend an award to the Plaintiffs for default on the Settlement Agreement and Promissory Note a sum in the amount of $12,793.90 ($7,747.71 for delinquent contributions and $5,046.19 as reinstated liquidated damages).

b. Unpaid Contributions for July 2024 and August 2024

Plaintiffs assert that the Defendants owe contributions in the amount of $12,557.79 for the NASI Funds. (ECF Nos. 10, ¶ 2; 10-1, p. 2). I find that Plaintiffs' request for unpaid contributions is supported by exhibits and a declaration from Ms. Bosmans. (ECF Nos. 10-4, ¶¶ 16-19; 10-16). Ms. Bosmans reviewed the Trust Agreements and Guidelines, and, in accordance with them, calculated the total amount of contributions owed for each month to NASI Funds by reviewing the reports previously submitted by the Defendants. (*Id.*). I also credit Plaintiffs' spreadsheet, which provides a monthly breakdown of the contributions owed to the NASI Funds. (ECF No. 10-16).

Defendants have not refuted the Plaintiffs' evidence because they failed to file a responsive pleading. Thus, I recommend an award to the Plaintiffs for unpaid contributions to the NASI Funds for July 2024 and August 2024 in the amount of $12,557.79.

c. Accrued Interest on Unpaid Contributions

Plaintiffs claim accrued interest in the amount of $170.16 for the NASI Funds. (ECF Nos. 10, ¶ 4; 10-1, p. 2). The ability to assess interest on late contributions is found in 29 U.S.C. §

10

1132(g)(2)(C)(i), which states that "interest on unpaid contributions shall be determined by using the rate provided under the plan."

The Trust Agreements for NASI Funds establish guidelines for computing interest on unpaid contributions. Interest will be assessed at the rate of 12% *per annum*, compounded monthly "from the date of delinquency to the date of payment." (ECF Nos. 10-9, p. 37; 10-10, p. 34; 10-11, p. 36; 10-12, p. 35; 10-13, p. 58; 10-14, p. 5). Here, there is undisputed evidence that the Defendant's unpaid contributions for the months of July 2024 and August 2024 are delinquent. Therefore, Plaintiffs are entitled to interest assessed on the unpaid total for these months.

Accordingly, I recommend that the Court award Plaintiffs accrued interest in the amount of $170.16 for July 2024 and August 2024, plus any further accrued interest consistent with the NASI Funds' Trust Agreement and Guidelines for computing interest on unpaid contributions upon date of payment. *See* 29 U.S.C. § 1132(g)(2)(E) ("the court shall award such other legal or equitable relief as [it] deems appropriate").

   d. Liquidated Damages

Plaintiffs request liquidated damages in the amount of $1,706.23 associated with July 2024 and August 2024. (ECF Nos. 10, ¶ 3[1]; 10-1, p. 2).

Under ERISA, a prevailing party shall be entitled to liquidated damages, which "can be awarded at the greater amount of either: (1) the [accrued] interest on delinquent contributions; or (2) the 'liquidated damages provided for under the plan and not in excess of 20 percent' of the delinquent contributions." *Trustees of the Nat'l Elec. Benefit Fund v. Loga Holding, LLC*, Civ. No. PWG-21-2917, 2022 WL 3100759, at *3 (D. Md. Aug. 4, 2022) (citing 29 U.S.C. §

---

[1] In the Motion at ¶ 3, this is the only instance where Plaintiffs request $6,752.42 in liquidated damages instead of $1,706.23, as requested throughout the rest of their Motion, and as reflected in Ms. Bosmans' declaration and chart. (*See* ECF No. 10-1, p. 2; 10-4, ¶ 21; 10-16). Accordingly, the undersigned regards the request for liquidated damages in the amount of $6,752.42 as a typographical error.

1132(g)(2)(C)(i)-(ii)).

Here, for the NASI Funds, the record reflects that Plaintiffs are seeking $1,706.23 in liquidated damages, per the rate set forth in the Trust Agreements. (ECF Nos. 10, ¶ 3; 10-1, p. 2). I compared the total amount of liquidated damages assessed to the total amount of unpaid contributions. I find that the requested amount of liquidated damages, at the rate set forth in the Trust Agreements, do not exceed what is permitted by statute, as the Trust Agreements allow for a recovery of 20% of the delinquent contributions. (*Id.*).

I find that Plaintiffs' damages request is supported by exhibits and a declaration from Ms. Bosmans. (ECF Nos. 10-4, ¶¶ 18-21; 10-16). Ms. Bosmans reviewed the Trust Agreements and Guidelines, and, in accordance with them, calculated the total amount of liquidated damages owed for each month to NASI Funds by reviewing the reports previously submitted by the Defendants. (ECF No. 10-14, ¶¶ 18-21). I also credit Plaintiffs' spreadsheet, which provides a monthly breakdown of the liquidated damages owed to the NASI Funds. (ECF No. 10-16).

As such, I recommend an award of liquidated damages to the Plaintiffs in the amount of $1,706.23 for the NASI Funds.

e. Attorney's Fees and Court Costs

The statute, 29 U.S.C. § 1132(g)(2)(D), mandates that a district court award "reasonable attorney's fees and costs of the action," where, as here, the requesting party prevails. In determining an award of attorney's fees, the "lodestar" approach, which is examining "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," is the most appropriate method for the Court to utilize. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 802 (2002); *Ideal Insulation, Inc.*, 2011 WL 5151067, at *6; *Int'l Painters & Allied Trades Indus. Pension Fund v. HG Professional Painting Inc.*, Civ. No. WDQ-11-172, 2011 WL 3744123, at *7 (D. Md Aug. 23, 2011); *see also Plyer v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (stating that "[i]n

addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award") (internal citations omitted).

A plaintiff "must show that the number of hours for which he [or she] seeks reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary." *Travis v. Prime Lending*, Civ. No. NKM-07-65, 2008 WL 2397330, at *4 (W.D. Va. June 12, 2008). Appendix B of this district's "Local Rules, Rules and Guidelines for Determining Attorneys' Fees in Certain Cases" (D. Md. 2023) ("Local Rules") provides, in pertinent part, that lawyers admitted to the Bar for twenty years or more may reasonably bill $300-475/hour, and paralegals may reasonably bill $95-150/hour. *See* Local Rules, App'x B, at 3.e, f.

In this case, Plaintiffs request payments in the amounts of $1,743.00. In support, Plaintiffs offer a declaration from Charles W. Gilligan, Esq. ("Mr. Gilligan"), a partner with the law firm of O'Donoghue & O'Donoghue, who has been a member of the Bar for more than thirty-seven years. (ECF No. 10-17). Mr. Gilligan submits a chart and invoices related to legal costs. (ECF Nos. 10-18 through 10-20). The chart reflects that from July 24, 2024 through September 25, 2024, he billed Plaintiffs a total of 0.75 hours of work for a total fee of $280.50.[2] (*See* ECF No. 10-18).

In addition, Teresa Butler, a paralegal with the law firm of O'Donoghue & O'Donoghue, performed paralegal work under the supervision of Mr. Gilligan. Ms. Butler has a degree in paralegal studies and has been employed as a paralegal for approximately 40 years. (ECF No. 10-17, ¶ 2). Mr. Gilligan's chart reflects that Ms. Butler billed the Plaintiffs 9.75 hours of work at an

---

[2] The Motion states that Mr. Gilligan billed the Plaintiffs at the of $360.00 per hour, however, spreadsheets show billing at the rate of $374.00. (*See* ECF Nos. 10-1, p. 1; 10-18). On July 24, 2024, Mr. Gilligan billed Plaintiffs for 0.25 hours of work at an hourly rate of $374.00, for a fee of $93.50. On September 18, 2024, he billed Plaintiffs for 0.25 hours of work at an hourly rate of $374.00, for a fee of $93.50. Lastly, on September 25, 2024, he billed Plaintiffs for 0.25 hours of work at an hourly rate of $374.00, for a fee of $93.50. (*See* ECF No. 10-18).

hourly rate of $150.00, for a fee of $1,462.50.  (*See* ECF No. 10-18).

Mr. Gilligan is claiming a total of $1,743.00 for attorney's fees and paralegal-related fees. According to Mr. Gilligan, the hours generated relate to research, review, correspondence, and preparing the Complaint and default judgment motions.  (*Id.*).  Both Mr. Gilligan's and Ms. Butler's hourly rates fall within the suggested range.  *See* Local Rules, App'x B, at 3.e., f.  I find that a total of 10.50 hours is a reasonable amount of time expended for the work performed by Mr. Gilligan and Ms. Butler.  In sum, I find that a request for $1,743.00 for attorney's fees and paralegal-related fees is reasonable.

In addition, Plaintiffs seek court costs of $405.00 (court filing fee) and $295.00 (private process server fees) for total costs in the amount of $700.00. (ECF No. 10-17, ¶¶ 6, 7).  In support of the request, Plaintiffs provide proof of payment of court costs and invoices from the process server.  (ECF Nos. 10-19, 10-20).  I find that this type of cost is ordinarily charged to a client and is reasonable out-of-pocket expense. In addition, by statute, Plaintiffs are entitled to such court costs. *See* 29 U.S.C. § 1132(g)(2)(D).

Accordingly, I recommend that the Court award $1,743.00 in attorney's fees and $700.00 in court costs.

### III.    CONCLUSION

In sum, I respectfully recommend that the Court, **GRANT** Plaintiffs' "Motion for Entry of Default Judgment" against the Defendants, jointly and severally. (ECF No. 10). I further recommend that the Court enter judgment in favor of the Plaintiffs for a sum of $29,671.08, as listed in the following amounts:

1) Default on the Settlement Agreement and Promissory Note for unpaid contributions and liquidated damages in the amount of $12,793.90;

2) Additional unpaid contributions in the amount of $12,557.79;

14

3) Liquidated damages in the amount of $1,706.23;

4) Interest in the amount of $170.16 plus interest accrued at the rate of 12% *per annum* upon the date of payment;

5) Attorney's fees of $1,743.00; and

6) Court costs in the amount of $700.00.

Dated: April 15, 2025

                                                     /s/
                                         The Honorable Gina L. Simms
                                         United States Magistrate Judge